## CLAUNCH v. UNITED STATES.

### No. 11531.

Circuit Court of Appeals, Fifth Circuit.

May 10, 1946.

William Z. Rozan, of Houston, Tex., for appellant.

Charles H. Sherman, Jr. and William R. Eckhardt, Asst. U. S. Atty., both of Houston, Tex., for the United States.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

Appellant was convicted on three counts of an indictment, the first charging him with conspiracy under 18 U.S.C.A. § 88; the second charging him with bribery of a person acting for and in behalf of the United States in an official function, in violation of 18 U.S.C.A. § 91; and the third charging him with evading service in the armed forces of the United States, in violation of 50 U.S.C.A.Appendix, § 311.

The record shows that appellant was ordered by the local draft board at Houston, Texas, to report for pre-induction physical examination, and that before leaving the induction center he was advised that he had passed it successfully. His informant was Sergeant Feigle, whose duty it was to examine the papers of the men and tell them whether or not they had passed. It was also Feigle's duty to check their records to see for what branch of the service they had qualified, and to send them to the assignment officer.

Feigle told appellant that, on account of his age, he did not see why he was accepted, to which appellant replied that he could not understand it either, as he had been rejected twice on account of a foot injury. Both appellant and Feigle testified that after some conversation in regard to his being accepted, Feigle asked him if he would pay $50 to keep out of the army. Appellant told him he would, and a few hours later he delivered the money to Feigle, who told him there was a man "up in front that could fix his papers" so he would not have to go to the army. Feigle introduced appellant to Sergeant Redwine, who was the statistical clerk at the induction center and who prepared for the draft boards the records on the disposition of the selectees who were sent in for pre-induction examinations. Feigle and Redwine divided the $50 equally. Redwine testified that where appellant's worksheet stated "cardio vascular" normal, he changed it to read "valvular heart disease," with the notation "disqualified," and then changed the back of the medical worksheet from

"accepted" to read "rejected." When the reports were returned to the local draft board, appellant, on July 25, 1945, was reclassified in 4–F.

Appellant contends that the verdict of the jury was the result of prejudice due to the voluntary statement of the witness Feigle that in an anonymous telephone call he had been informed that defendant had served in the penitentiary for murder, and had been warned to "take it pretty easy" when he got up in the court room. The trial court immediately excluded this statement, and instructed the jury to disregard it entirely. No motion to discharge the jury and enter a mistrial was made. It was not error for the court not to enter a mistrial of its own motion. A defendant cannot experiment by letting the jury render a verdict without objection, and then upon conviction take the position that the voluntary statement of a witness was so prejudicial as to entitle him to a new trial.[1]

Appellant further contends that his testimony on cross-examination, over his objection, as to arrests made in 1932 and as to his conviction of robbery by assault in 1933, served only to prejudice the minds of the jury, and constituted reversible error. These points have nothing to do with the right of a defendant not to be compelled in any criminal case to be a witness against himself. The appellant voluntarily took the witness stand in his own behalf, thereby waiving his constitutional immunity and causing his credibility as a witness to become an issue in the case. The trial court committed no error in permitting him on cross-examination to be questioned with regard to statements made by him to special agents of the Federal Bureau of Investigation while under arrest. It was the Government's privilege to question him with regard to any statements he had made that were pertinent to the issues, and to point out any inconsistencies between such statements and his testimony at the trial.[2] Replying to these questions, appellant in effect stated that he told the agents only that he would not discuss the case without first talking to his lawyer.

As to his conviction of robbery by assault in 1933, it is well settled that such evidence is admissible for purposes of impeachment. Whether the conviction was so remote as to have no probative value was a question addressed to the sound discretion of the trial court. That discretion was not abused by the admission of this evidence.[3]

Appellant's assignment that the trial court charged the jury improperly is not well taken. The court fully instructed the jury as to every element of the offenses charged in the indictment. It also, after a conference at the bench with counsel, gave the jury an additional charge to the effect that the defendant must have had the intention of violating the law. Furthermore, no objection was made to any part of the charge or to the court's refusal to give requested instructions.

The jury were well warranted in returning a verdict of guilty. The appellant's own testimony supported every fact charged in the indictment except the one of guilty intent, and on that question also the issue was properly submitted to the jury. There being ample evidence to support the verdict, and no reversible error appearing, the judgment appealed from is

Affirmed.

[1] Etie v. U. S., 5 Cir., 55 F.2d 114.
[2] Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Buckner, 2 Cir., 108 F.2d 921, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016; Banning v. United States, 6 Cir., 130 F.2d 330, certiorari denied, 317 U.S. 695, 63 S.Ct. 434, 87 L. Ed. 556.
[3] Fire Association of Philadelphia v. Weathered, 5 Cir., 62 F.2d 78; Goddard v. United States, 5 Cir., 131 F.2d 220; Burt v. United States, 5 Cir., 139 F.2d 73.