**UNITED STATES of America ex rel. George MALDONADO, Petitioner,**

v.

**Hon. Wilfred L. DENNO, as Warden of Sing Sing Prison, Ossining, New York, Respondent.**

United States District Court
S. D. New York.

Feb. 18, 1965.

Anthony F. Marra, Legal Aid Society New York City, Joshua Koplovitz, Ben Vinar, New York City, of counsel, for petitioner.

Louis J. Lefkowitz, Atty. Gen., of State of New York, New York City, John DeWitt Gregory, Asst. Atty. Gen., of counsel, for respondent.

TENNEY, District Judge.

Relator, a prisoner in a State institution, applies to this Court for a writ of habeas corpus pursuant to Section 2241 of Title 28 of the United States Code (28 U.S.C. § 2241 (1959)). Respondent is the Warden of Sing Sing Prison, Ossining, New York, where relator is incarcerated.

Relator and a co-defendant, one Nicholas DiBlasi, were convicted after trial by jury of the crimes of third degree burglary, petit larceny and possession of burglar's tools. On May 9, 1963, relator and DiBlasi were sentenced as second-felony offenders in the Supreme Court, Kings County, to indeterminate terms of five to ten years at hard labor on the burglary conviction, and sentence was suspended on the conviction for petit larceny. The judgments of con-

viction were affirmed on July 1, 1964, by the Appellate Division, Second Department (People v. Maldonado, 21 App. Div.2d 964, 252 N.Y.S.2d 405 (2d Dep't 1964)), and on October 27, 1964, leave to appeal to the Court of Appeals was denied by the Honorable Stanley H. Fuld, an Associate Justice of that Court. Accordingly, it would appear that State remedies have been exhausted.

At the trial both defendants were represented by the Legal Aid Society— Arthur Brook, of counsel.

The relevant allegations of the petition recite that:

"  *   *   * [B]efore his trial began and before a jury was selected petitioner requested but was denied the right to conduct his own defense without the aid of counsel. Although petitioner explicitly and emphatically complained to the trial judge that he had no confidence in his assigned counsel and asked that such counsel be discharged, the Court nonetheless insisted that petitioner's defense be conducted by said assigned counsel and refused to permit petitioner to dispense with counsel and conduct his own defense." [1]

From the record it would appear that defendant, together with his co-defendant DiBlasi, were brought before the New York Supreme Court for trial on the above-mentioned charges, each man having pleaded not guilty. Prior to the selection of a jury (Tr. 4), both defendants stated to the Court that they were not satisfied with the attorney assigned to represent them, and each requested that another attorney be assigned (Tr. 2, 4–5). Petitioner herein also advised the Court that his own retained counsel had only recently withdrawn from the case because petitioner could not pay him and the Legal Aid attorney whom he objected to had been assigned to him barely before the trial

was ready to begin (Tr. 3, 7) and that this was not enough time to prepare his defense (Tr. 6—see also Tr. 49). The Court denied the applications for substitution of a new Court-appointed attorney, pointing out that the trial was about to begin and that defendants' applications accordingly were not timely (Tr. 4, 6).

The portions of the record which are pertinent, and with emphasis added, are as follows:

"Defendant Maldonado: Your Honor, I would like to say thank you for assigning a lawyer, but I don't feel that this man is interested in my case, and I would like to be assigned someone else.

"The Court: How long have you had this lawyer? (Tr. 2)

"Defendant Maldonado: I have had him since eight, ten minutes ago, sir.

"The Court: Eight or ten minutes ago?

"Defendant Maldonado: Yes, sir.

"The Court: You mean you have never seen this lawyer before?

"Defendant Maldonado: I don't recall.

"The Court: Don't tell me you don't recall. Have you seen him? Yes or no.

"Defendant Maldonado: I think so.

"The Court: What do you mean, you think so? Have you discussed it with him before?

"Defendant Maldonado: I don't remember, sir.

"The Court: Yes or no. Have you discussed this case with him before? Don't jockey with me, mister.

"Defendant DiBlasi: May I say something? He was my lawyer

1. DiBlasi unsuccessfully made an identical claim in the U.S. District Court for the Northern District of New York. United States ex rel. DiBlasi v. McMann, 236 F.Supp. 592 (N.D.N.Y.1964). However,

Judge Foley pointed out that "[t]he only request to be his own lawyer was made by the co-defendant" (id. at 593), and refused DiBlasi the derivative benefit thereof.

when my co-defendant was out on bail at the time, and he had a different lawyer.

"The Court: Did you ever discuss it with this lawyer before?

"Defendant Maldonado: I don't remember, sir.

"The Court: Do you have any money to hire a lawyer? (Tr. 3)

"Defendant Maldonado: No, your Honor.

"The Court: Then what do you suggest the Court do?

"Defendant Maldonado: Assign me someone—

"The Court: How do you come to the conclusion that you don't want this lawyer?

"Defendant Maldonado: I just feel that—

"The Court: And do you come to the conclusion just as we are ready to pick a jury?

"Defendant Maldonado: Yes.

"The Court: Application denied. This is your lawyer.

\*    \*    \*    \*    \*

"Defendant Maldonado: Your Honor, I don't feel that this man, in eight or ten minutes, can defend me. I am facing a lot of time.

"The Court: All right, mister, you have had your say. Sit down. We are trying this case.

"Defendant Maldonado: *Your Honor, if I feel that the case must go on, I want to be able to act as my own attorney. Would you give me that permission, sir?*

"The Court: No. No. You sit down, mister. You have got a lawyer, a good lawyer, and he is going to try your case. Now sit down." (Tr. 6)

After the jury's verdict, the following occurred:

"Mr. Brook: If the Court please, I would like to expressly reserve my right to make any post-trial motions until a subsequent day. Prob-

ably the day of sentence in this case.

"The Court: All right, fine.

"Mr. Brook: I understand the defendant Maldonado wishes to make a statement to the Court. I don't know what it is. He wants to make it to the Court.

"The Court: Put it on the record.

"Defendant Maldonado: Let me make sure it is on the record, that I was given this trial against my wishes of having this attorney on my first day of trial. I didn't think that ten minutes in the bullpen was sufficient time to defend me, and I explained it, and it was denied. I take an exception to that." (Tr. 148–49)

It cannot be denied that the Sixth Amendment to the Constitution of the United States guarantees the right of an accused to a fair trial. The right to a fair trial is the very essence of due process. The Fourteenth Amendment to the Constitution requires that no State shall deprive any person of life, liberty or property without due process of law. The right to a fair trial, guaranteed in the Sixth Amendment, is also embodied and applied as to State court proceedings in the due process requirement of the Fourteenth Amendment. See Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Certainly one of the most elementary prerequisites of a fair trial is the right of the accused to defend himself either in person or by counsel of his own choosing. This principle is recognized in unequivocal terms both in the Constitution and the statutes of the State of New York. New York Const., art. 1, § 6; New York Code of Criminal Procedure § 8.

Thus, as a prerequisite of a fair trial as well as of the fundamental principles of justice protected by the requirement of due process, the right

of an accused to conduct his own defense is unquestionably protected by the Constitution of the United States. As stated by the Court in People v. McLaughlin, 291 N.Y. 480, 53 N.E.2d 356 (1944):

" 'Under both our Federal and State Constitutions, *a defendant has the right to defend in person* or by counsel of his own choosing.' People v. Price, 262 N.Y. 410, 412, 187 N.E. 298, 299. *That right, based as it is on a fundamental principle of justice, must be protected by the trial judge.* \* \* \* This fundamental right is denied to a defendant unless he gets reasonable time and a fair opportunity to secure counsel of his own choice and, with that counsel's assistance, to prepare for trial; no last-minute, peremptory assignment of counsel will serve, particularly when made at such a time and under such circumstances as practically to preclude the giving by counsel to prisoner and prisoner to counsel, of effective aid in the preparation of the case." (Id. at 482–483, 53 N.E.2d at 357.) (Emphasis added.)

Although, in the past, it has been primarily the right of an indigent accused to have counsel appointed to assist him, that has provided the major area of dispute, the right to counsel can in no way detract from the at least equally fundamental right to dispense with counsel.

This fact was recently emphasized by the United States Court of Appeals for this Circuit in United States v. Plattner, 330 F.2d 271 (2d Cir. 1964), where the Court reversed a denial of a writ of error *coram nobis* because the trial court had denied the petitioner the right to conduct his own *coram nobis* hearing, even though, at the time he had sought to conduct the hearing, the petitioner was in prison as a convicted felon. See Reynolds v. United States, 267 F.2d 235 (9th Cir. 1959) (Per curiam).

In Plattner, the Court declared that:
" \* \* \* [T]he Sixth Amendment protects the right of the accused 'to have the Assistance of Counsel for his defence.'

"This safeguard was surely not intended to limit in any way the absolute and primary right to conduct one's own defense *in propria persona*. Nor is the existence of this right made doubtful by the circumstance that the now all but universal requirement of the assignment of counsel to indigent defendants is the development of a later generation and more enlightened views. Indeed, and strangely enough, there would probably have been no denial of Plattner's right to act *pro se* had the Court not been so accustomed in these recent years to assign Legal Aid counsel or other lawyers to defend those indigent defendants who had no means to pay counsel of their own choosing." (Id. 330 F.2d at 274.)

So basic is this right of a prisoner to conduct his own defense that even in insanity hearings to determine the legal responsibility of prisoners for their acts, the courts of New York have held that defendants have an absolute right to argue their own defense. People v. Pugach, 33 Misc.2d 938, 942, 225 N.Y.S.2d 822, 826 (Bronx County Ct. 1962); People v. Cunningham, 2 Misc.2d 162, 164, 134 N.Y.S.2d 212, 215 (Bronx County Ct.), appeal dismissed, 283 App.Div. 1057, 132 N.Y.S.2d 927 (1st Dep't 1954).

On the basis of this principle, criminal convictions where defendants have defended themselves without the aid of counsel have frequently been upheld, the Courts pointing out that since the prisoners had an absolute right to conduct their own defense, therefore there had been no error in their having been permitted to do so. See, e. g., People v. Murphy, 202 Misc. 332, 334–335, 117 N.Y.S.2d 893, 895 (Nassau County Ct. 1951); People v. Cunningham, *supra*.

Respondent contends that petitioner did not waive his fundamental right to the assistance of counsel at his trial, but that he did waive whatever rights he may have had to conduct his

defense *in propria persona*. In any event, respondent argues that petitioner's conduct, and that of his co-defendant, was calculated to frustrate and delay the orderly administration of the judicial procedure. However, I do not find support for this in the record,—certainly not insofar as the petitioner is concerned. The record reveals a repeatedly expressed unwillingness to proceed with the counsel assigned him. It is true petitioner expressed a desire for assignment of new counsel, but he also expressed a willingness to proceed as his own counsel if his request for new counsel was denied.

■ Certainly there is no ambiguity in the statement: "Your Honor, if I feel that the case must go on, I want to be able to act as my own attorney. Would you give me that permission, sir?" Had the Court granted petitioner leave to defend himself, the trial could have proceeded forthwith without frustration and delay of orderly procedures. Nor do I believe that petitioner's failure to reassert his demand at the close of the trial negates his clear assertion thereof prior to the commencement of trial.

■ Since we are dealing with a right arising out of the Federal Constitution, no showing of prejudice to petitioner by denial of his right to defend *pro se* is required.

"As we hold that a defendant on the trial of a criminal case, including a *coram nobis* proceeding at which the defendant is present and witnesses are to be examined and cross-examined, has a right to conduct and manage his own case *pro se*, we reverse the order appealed from and remand the case. Moreover, *we hold the right to act pro se as above stated is a right arising out of the Federal Constitution and not the mere product of legislation or judicial decision. Thus we would be required to remand the case, even if no prejudice to Plattner were shown to have resulted from the refusal to permit him to act pro se.*

"Under the Fifth Amendment, no person may be deprived of liberty without due process of law. Minimum requirements of due process in federal criminal trials are set forth in the Sixth Amendment. * * * *Implicit in both amendments is the right of the accused personally to manage and conduct his own defense in a criminal case.*" United States v. Plattner, 330 F.2d at 273–274. (Emphasis added.) See Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749, 759–760 (1951), cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952); United States ex rel. Cooper v. Denno, 221 F.2d 626, 628, 631 (2d Cir.) (Frank, J., concurring), cert. denied, 349 U.S. 968, 75 S.Ct. 906, 99 L.Ed. 1289 (1955).

■ I have the fullest sympathy for my brother trial judges who are faced, day in and day out, with defendants whose principal concern appears to be to create a record which will support claims of the type made here. However, when a constitutional right is asserted, the purpose or motive behind its assertion cannot be a subject for conjecture upon which to deny it.

In view of the Court's decision herein, we need not pass on the validity of other contentions raised by petitioner in his brief and others adverted to but not raised in the within petition.

Accordingly, the within petition for a writ of habeas corpus is granted, and petitioner ordered discharged from custody under the present judgment of conviction, but opportunity will be afforded to either appeal from this grant of the writ or to retry petitioner if that procedure is deemed advisable. Execution of the writ will, therefore, be stayed for a period of thirty (30) days. At the end of that period of time, if there has neither been an appeal taken from this ruling nor an initiation of proceedings looking to a retrial, the writ will be executed and the petitioner released. See United States ex rel. Manduchi v. Tracy, 233 F.Supp. 423 (E.D.Pa.1964).

So ordered.