Thomas A. KENT, Petitioner, Appellant,

v.

UNITED STATES of America, Respondent, Appellee.

No. 5512.

United States Court of Appeals First Circuit.

Dec. 28. 1959.

Thomas A. Kent, pro se, on brief for appellant.

Arlyne F. Hassett, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Petitioner is presently serving a sentence of 15 years imposed by the district court for the District of Massachusetts upon a plea of guilty to a charge of bank robbery. He appeals from the order denying his motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. The action of the court below took place after the taking of testimony at a hearing at which petitioner was not present or represented.

A preliminary question points up a matter that has concerned this court for some time. Petitioner filed a brief, but was not present or otherwise represented at the hearing of his appeal. This was in accordance with our customary practice when there are no special circumstances. See Price v. Johnston, 1948, 334 U.S. 266, 278–280, 284–286, 68 S.Ct. 1049, 92 L.Ed. 1356. The government filed a brief. It also made an oral argument. Three days after the argument, petitioner submitted a reply brief. The immediate question is whether this tardy brief should be accepted for late filing. We ordered it filed. The more serious question, which this raises indirectly, relates to our practice of permitting oral argument by the government when a petitioner has no such opportunity. It seems to us, on further reflection, that this gives the government an undue advantage, particularly if any new matters should develop at the argument. Petitioner has a chance to reply to the government's brief—as has been done here—but he cannot reply to an argument he has not heard. Henceforth we shall not permit in this court oral argument by the government on petitions where we have not afforded the prisoner like opportunity.

The following facts appear on the record. On January 25, 1957, petitioner was indicted, charged with robbery of a federally-insured bank, in violation of 18 U.S.C. § 2113(a). On March 4 he was arraigned and pleaded guilty, and on March 13, 1957, he appeared and was sentenced. On both these occasions he was represented by counsel of his own choosing. In his petition he alleges that on January 24, 1957, at about 8 A.M., he was lured out of his home by a ruse and surrounded by several armed FBI agents "and at least one Lieutenant" of the Massachusetts State Police; that he

was then placed under arrest and taken immediately to FBI headquarters in Boston; that during the morning he was shown a "confession" by his fiancee implicating him, and implicating herself as an accessory, and that he was taken to a room where his fiancee identified him and admitted signing the statement; that he was questioned "almost continuously" until 4:30 P.M., at which time he made an oral confession, which was then reduced to writing; and that thereafter he was taken before a United States Commissioner. He asserts that this delay between his arrest and his production before the Commissioner was a violation of his statutory and constitutional rights, citing McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, rehearing denied 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727, and Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100. See also Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. He further alleges that he signed the confession not merely because of such unlawful delay, but because he was in actual fear and was coerced by threats that, if he did not confess, "they would turn petitioner over to the State Police" (some of whom were present), and that "if petitioner continued to maintain innocence and tried to fight the case [by] pleading not guilty," his brother and other persons would be held and forced to testify against him, and that his fiancee would be charged as an accessory and "forced to testify against petitioner and herself * * * regardless of how she felt about it." There is a final allegation that "because of fear, and his confession and the duress involved, he waived a jury trial and entered his plea of guilty * * " and a "contention" that "the judgment and sentence is void, because of [sic] his confession and plea of guilty were brought about by coercion by the officers of the Federal Bureau of Investigation contrary to the provisions and the due process of law clause of the Fifth Amendment of the Constitution * *." [1]

The petitioner requested a hearing at which he could testify. In due course a hearing was held, but petitioner was not invited. Although there is nothing in the record showing the reason why, the government states it was because the court possessed petitioner's "sworn affidavit contained in his motion." Government brief, p. 3. The government goes on to say that although no hearing was required, "in an effort to give the appellant the benefit of any facts helpful to him which might be brought out at a hearing, the Court requested the United States Attorney to have witnesses present to be interrogated * * *." Id., p. 4. The ensuing rendition of Hamlet without the prince was anything but helpful to the petitioner, as the court found all material allegations of his sworn petition contradicted and untrue. Specifically, it found that petitioner voluntarily accompanied the agents to FBI headquarters, remained there throughout the day, confessed of his own free will, and was not arrested until after he had done so.

■■ Assuming for the moment that a hearing was required, see 28 U.S.C. § 2255 (third paragraph); cf. Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302, it was error for the court to have resolved these issues against petitioner without permitting him to testify. It is true that section 2255 provides that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing." However, this is a matter of judicial discretion, to which there are limits. "Where * * * there are substantial issues of fact [2] as to events in which the prisoner participated, the trial court should require his production for a hearing." United States v. Hayman, 1952, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232. Consequently,

1. There is a further "contention," but it is included within this one and need not be separately stated.

2. This, of course, means relevant facts.

the hearing in petitioner's absence must be treated as a nullity, and the court's findings disregarded.

■■ The government contends that the denial of the motion was nonetheless correct because the petition on its face conclusively shows petitioner has no grounds for relief. Insofar as the allegations of illegal detention are concerned, we readily agree. Excessive detention before arraignment is not, per se, a violation of constitutional rights, nor is the use at trial of a confession so obtained. Brown v. Allen, 1953, 344 U.S. 443, 476, 73 S.Ct. 397, 97 L.Ed. 469, rehearing denied 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370. The government further says that the detention is immaterial because petitioner was convicted upon his plea, so that the confession was not "used," citing United States v. Sturm, 7 Cir., 1950, 180 F.2d 413, certiorari denied 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388, and Hall v. United States, 8 Cir., 1958, 259 F.2d 430, certiorari denied 1959, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed. 2d 680. We do not need to pass here upon the overtones this may suggest, because we at least agree with the government that if petitioner's plea was made following a voluntary confession, the mere fact that this confession was obtained during a period of excessive, and hence illegal, detention, would not in itself make the plea subject to collateral attack. United States v. Morin, 3 Cir., 1959, 265 F.2d 241, 246.

■ A more serious question is presented by the contention that the confession was involuntary because obtained by fear and duress. This raises constitutional issues which under some circumstances may render the sentence subject to collateral attack. Compare Waley v. Johnston, supra, with Smith v. United States, 1950, 88 U.S.App.D.C. 80, 187 F.2d 192, certiorari denied 1951, 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358. While, as previously stated, the government says the confession was not "used," petitioner in effect alleges that the fact he had confessed influenced his decision to plead.

It may be difficult to see how a confession which was void, and hence inadmissible in evidence, could coerce a plea. However, we do not need to determine the legal force of this contention because we construe the petition as asserting that the same threats and "fears" that allegedly invalidated the confession continued to operate upon petitioner, quite aside from his confession, and caused him to enter his plea. The question, therefore, becomes whether these circumstances, if established as having continuing force, could be legally sufficient to invalidate the plea.

■ There are many reasons why a defendant may choose to plead guilty. They do not, simply by being denominated "fears," necessitate the conclusion that the plea was not voluntary. The fact that a defendant is told that his brother and others will be called to testify against him if he stands trial can not be illegal coercion, at least in the absence of an allegation that their testimony would have been false. A contrary conclusion would mean that the more obviously guilty a defendant was, and the more witnesses there were to testify against him, the better would be his position to have his plea set aside at some later date on the ground that he had been "coerced." Similarly, petitioner recites that his fiancee "confessed" in writing, and orally acknowledged her confession to him, and that he was told she would be charged as an accessory. We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments. Cf. Brown v. United States, 5 Cir., 1953, 204 F.2d 298, 300–301, certiorari denied 1954, 346 U.S. 925, 74 S.Ct. 314, 98 L.Ed. 418. Indeed, a contrary ruling would mean that a defendant could equally say that he pleaded guilty to save himself. It is certainly not duress, if the promise is kept, for the

government to say it will recommend a lighter sentence if a defendant pleads than it might recommend if he is convicted after trial. Yet, obviously, "fear" of the greater sentence may induce a plea. Petitioner must show that he was subjected to threats or promises of illegitimate action. Statements that other guilty parties will be prosecuted if he does not plead are not of that description.

Finally, petitioner alleges that he was told that if he did not admit the federal crime, he would be turned over to the state authorities. No doubt the crime, if committed, was also a state offense. This allegation merits no discussion.

Judgment will enter affirming the order of the District Court.