(No. 40926.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* TILFORD R. BOWMAN, Appellant.

*Opinion filed May 29, 1968.*

SCHAEFER, J., dissenting.

LAWRENCE W. BLICKMAN, of Quincy, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and ROBERT E. UTTER, State's Attorney, of Mt. Sterling, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Tilford R. Bowman pleaded guilty to burglary in the circuit court of Brown County on April 6, 1966, and was sentenced to three to five years imprisonment. Seven months later he filed a *pro se* post-conviction petition, counsel was appointed for him, and on February 20, 1967, an amended petition was filed alleging that the burglary conviction was void because his guilty plea was coerced and entered without the benefit of assistance of counsel. After a full evidentiary hearing the trial court denied the petition holding petitioner had failed to show a substantial denial of his constitutional rights. This appeal is from that denial.

The record establishes Bowman was taken into custody by the sheriff of Brown County and a McDonough County deputy about 6:30 P.M. on January 4, 1966. The next morning petitioner signed a written confession in which he admitted that he had burglarized a store in Brown County. The confession shows that before he made any incriminating remarks petitioner was warned that he had a right to consult an attorney, immediately if he wished, that his answers could be used against him in any future court proceeding, that no promises could be made to him, and that his statement must be made voluntarily without threats or promises of any kind. The statement further reveals Bowman responded that he did not wish to see an attorney, and he proceeded to admit that he and two others had taken part in the burglary during which he carried a .22 calibre revolver, and that his car was used for transportation. On the evening following his confession the petitioner escaped from the Brown County jail.

Bowman was again apprehended in Coeur d'Alene, Idaho, on April 1, 1966, and returned to the Brown County jail on April 3 by the Brown County sheriff and a Schuyler County deputy. The docket entries of the Brown County circuit court show that on April 4, 1966, petitioner was brought before the court, informed of the burglary charge against him and served with a copy of the complaint. The judge advised petitioner of his right to counsel, found him to be indigent, and granted his request for counsel, appointing A. L. Pezman. On the following day, April 5, petitioner and his attorney attended a preliminary hearing where the State presented evidence that Bowman had admitted the burglary. Probable cause being shown, petitioner was bound over to the grand jury, bond was set at $10,000, and defense counsel stated that the petitioner stood on his right to be indicted by the grand jury.

On April 6 Bowman appeared in court without Attorney Pezman, who was then in Chicago, waived indictment and pleaded guilty to the burglary charge. He contends on this appeal that when the trial court accepted his waivers and plea of guilty he was deprived of effective assistance of counsel, and that he was then "acting under the influences of intimidation, duress, undue influence and fear." Since petitioner chose to plead guilty, *pro se,* within twenty-four hours after he had requested counsel, counsel had been appointed and had informed the court that the accused elected to stand on his right to grand jury indictment, careful scrutiny of the April 6 proceedings is of critical importance to a determination of the ultimate question: Did acceptance of petitioner's plea in the circumstances of this case deprive him of his right to the effective assistance of counsel and thus constitute a denial of due process? We therefore quote the pertinent portions of those proceedings at length in order to demonstrate the reasons for our conclusion that the trial court carefully and adequately advised

petitioner of his rights and that they were freely, understandingly and intelligently waived:

"COURT: Mr. Bowman, we note that you are again present in person in open Court, sir. Is there some action that you wish to take in this matter, case number 66-CR-1 being a complaint for burglary, without the presence of your counsel, Mr. Pezman?

DEFENDANT: No, I want to go ahead with it, without an attorney.

COURT: Is that your wish to continue without your attorney?

DEFENDANT: Yes, sir.

\* \* \* \*

COURT: And you are twenty-two years old, correct?

DEFENDANT: Yes.

\* \* \* \*

[Defendant is supplied with copy of complaint.]

COURT: We now have compared that copy that you hold in your hands now with the original complaint on file here to make sure they are identical on both the front and back to the original. You do understand and we have explained this to you, of course, and I think you have talked with Mr. Pezman whom we did appoint to represent you that you do have a right to be represented by counsel and that we did appoint counsel to represent you, and have no desire—except on your own waiver and desire—to proceed without counsel, we wouldn't be able to consider the matter any further. Now, is that your desire, sir, at this time?

DEFENDANT: Yes, sir.

COURT: You mean you want to proceed on your own without any attorney.

DEFENDANT: Yes, that's right.

COURT: Very well then, I do think you understand your rights in the matter, and you have—have you not—discussed this matter with Mr. Pezman, so that you have had counsel on this at some time, correct, sir?

DEFENDANT: Yes.

COURT: And you do now wish to proceed without counsel and waive right to counsel?

DEFENDANT: Yes, that's right.

COURT: Let the record show that defendant now knowingly understandingly waives the right to be represented by counsel in this matter and elects to proceed to represent himself.

\* \* \* \*

COURT: Is our understanding correct then, that you do wish to proceed presently on the complaint as it stands?

DEFENDANT: Yes, sir.

120

COURT: And that you want to waive your right to an indictment by a Grand Jury, which you certainly do have, and we have no intention of endeavoring to try to talk you into waiving that right?

DEFENDANT: Yes.

[Defendant waives right to grand jury indictment.]

\* \* \* \*

COURT: Now, the charge, of course, is that of burglary, specifically in the Statute we find burglary defined as when a person without authority knowingly enters, or without authority, remains within, a building, etc., other types of places, with intent to commit therein a felony or theft. What the particular charge is here is that on the 4th day of January of this year, 1966, you, without authority knowingly entered into a building of Irwin Snyder with intent to commit therein a theft. Do you understand what the charges are now?

DEFENDANT: Yes.

COURT: What do you call the charge?

DEFENDANT: Burglary.

COURT: And you understand the particulars of the charge—the when and where of the charge?

DEFENDANT: Yes, sir.

COURT: Now, as to the penalties, it is essential that you understand what the possible penalties for a conviction under this burglary charge are. A person convicted of burglary shall be imprisoned in a penitentiary for any indeterminate term of years, with a minimum of not less than one year, so that any term of years would be appropriate sentence should there be a finding of guilty to this charge. The minimum would have to be not less than one year and the maximum could be any number of years. Do you understand that, sir?

DEFENDANT: Yes, I do.

COURT: [T]here are two pleas which you may enter to this charge, Mr. Bowman. Now, under the first plea that you may enter which is that of Not Guilty, you have a right to trial by jury. You have a right to confront all witness against you and cross examine them under oath. You have a right to call witnesses on your own behalf, and to testify, or not, as you choose, and you have a right to presumption of innocence which follows you all through the trial. In other words, the burden of proof is on the prosecution. You, of course, may also waive that right to trial by jury and elect to be tried by the Court alone. Do you think you understand those rights, sir?

DEFENDANT: Yes, sir.

COURT: Should you enter a Guilty plea and the Court accepts that plea, the Court would be obligated to impose a sentence of an indeterminate term of which the minimum sentence would be

one year and the maximum would be more than that. Do you understand that, sir?

DEFENDANT: Yes, sir.

COURT: And do we understand then, that you do now wish to waive that right to be tried by a jury, here in open Court?

DEFENDANT: I just as soon plead Guilty.

COURT: And you do waive that right to trial by jury, is that right?

DEFENDANT: Yes.

COURT: Very well, we will accept that just so we are satisfied that you understand what you are doing, Mr. Bowman. The major thing is that you are doing this of your own free will and accord.

DEFENDANT: Yes.

\* \* \* \*

[Defendant signs waiver of prosecution by indictment after it is read to him.]

COURT: Are you then now prepared to enter a plea of Not Guilty or Guilty to this Charge?

DEFENDANT: Yes.

COURT: And what is that plea?

DEFENDANT: 'Guilty'.

COURT: Now, Mr. Bowman, before we accept that plea, we would have to again satisfy ourselves that you do understand—that should we accept that plea, we would have to impose a penalty of an indeterminate term, the minimum of which would be one year, not less than one year, you do understand that, don't you?

DEFENDANT: Yes, sir.

COURT: And have any promises been made to you in regard to this matter? Here is the point you should understand, is that we have to satisfy ourselves that there has been no promises, force, or threats of force used upon you to induce you to enter your plea of guilty. In other words, your plea just given, was a voluntary one? You do understand that?

DEFENDANT: Yes.

COURT: So we do understand then, that there hasn't been any force or threats of force used upon you?

DEFENDANT: No, sir.

\* \* \* \*

COURT: We would, of course, consider but would not have to be bound, by any recommendation, but we would have to accept what we call aggravation or mitigation, and for that matter we will go very briefly into the Statute on that point with you.

\* \* \* \*

COURT: Now, so understanding these matters now, do you persist in your plea of Guilty, Mr. Bowman?

DEFENDANT: Yes.

COURT: Very well, we will accept that plea."

Petitioner's brief asks the question "Isn't a lawyer necessary before a defendant can knowingly and intelligently waive counsel?" A similar question was answered in *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 87 L. Ed. 268, 63 S. Ct. 236, where the accused had defended himself at trial, and the Court of Appeals had granted *habeas corpus* relief from the conviction because the defendant lacked assistance of counsel when he waived the right to a jury trial. The Supreme Court reversed the grant of *habeas corpus* noting: "The short of the matter is that an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. * * * [T]he Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." (317 U.S. at 275, 279, 87 L. Ed. at 272, 274, 63 S. Ct. at 240, 242.) And while the right to counsel has since been substantially broadened (see *Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792; *White* v. *Maryland,* 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050; *Massiah* v. *United States,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199; *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758; *McLeod* v. *Ohio,* 381 U.S. 356, 14 L. Ed. 2d 682, 85 S. Ct. 1556; *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), no case of which we know has affirmatively answered defendant's question. Nor do we. There exist fundamental distinctions between those cases and this. There the issues embraced only the extent of the accused's right to counsel; here the issue involved the correlative right of the accused to proceed *pro se* if he freely and understandingly chooses to do so. In those cases it was

contended no right to counsel existed in the circumstances there prevailing. Here the right to counsel is unquestioned —but it cannot, in our opinion, preclude an accused from proceeding without counsel if he does so in the manner above indicated. "The right of a defendant to represent himself, when his choice is intelligently made, is as basic and fundamental as his right to be represented by counsel." (*People* v. *Sinko,* 21 Ill.2d 23, 25-6; see *People* v. *Robinson,* 27 Ill.2d 289, 293; *People* v. *Bush,* 32 Ill.2d 484, 488.) That the sixth-amendment safeguard was never intended to prevent an informed defendant from proceeding in *propria persona* may be inferred from a reading of section 35 of the Judiciary Act of 1789, (1 Stat. 73, 92 (1789),) which was passed by the First Congress and signed by President Washington one day before that Congress was to propose the sixth amendment. (*United States* v. *Plattner* (2d cir.), 330 F.2d 271, 274.) Section 35 provided that "in all the courts of the United States, *the parties may plead and manage their own causes personally* or by the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein." (Emphasis supplied.)

It has been found to be reversible error to refuse a criminal defendant's timely request for self-representation. *Plattner; State* v. *Thomlinson,* 78 S.D. 235, 100 N.W.2d 121; *Reynolds* v. *United States* (9th cir.), 267 F.2d 235; *United States ex rel. Maldonado* v. *Denno* (S.D.N.Y.), 239 F. Supp. 851.

When Tilford R. Bowman appeared in court to plead guilty he was 22 years old, had completed the eighth grade, and was a painter and roofer by trade. He was married with one child and no attempt is made in this case to show that he possessed other than normal intelligence. The post-conviction judge expressly found petitioner was of average intelligence, that he could read and write and understood the explanations of his rights. Petitioner had twice been

convicted of burglary in an adjoining county and was represented by counsel during one of those prosecutions. In the context of these circumstances we believe he could competently waive counsel, and the quoted portions of the record reveal that the trial court adequately informed him of his constitutional rights. We accordingly hold that, unless the facts presented at the post-conviction hearing reveal that defendant's guilty plea was coerced, his conviction must stand.

In attempting to establish that his guilty plea of April 6 was coerced petitioner alleges that it was the product of threats and coercion applied to him by law enforcement authorities during the period of April 5 and 6, while he was being held in custody in the Brown County jail. His testimony at the post-conviction hearing was that during this period Sheriff Busen of Brown County approached him while petitioner was being held in a tight-security cell and asked him if he would be willing to plead guilty and be sentenced to a term of 3 to 7 years imprisonment on the burglary charge. At the time that these plea negotiations took place petitioner was wanted in the counties of Schuyler, Mason and McDonough for burglaries, a warrant for his apprehension for parole violation from Menard prison had been issued, and he was subject to prosecution for his January escape from the Brown County jail. Petitioner testified that he pleaded guilty because he was "scared", but much of the record of the post-conviction hearing belies this contention especially in light of his prior experience in criminal matters. See *United States* v. *Kniess* (7th cir.), 264 F.2d 353, 356.

Petitioner argues that the Brown County sheriff acted as "negotiator" for the prosecution, but the mere fact that a law enforcement official visits a prisoner in the absence of his counsel and informs him of what action is intended to be taken does not, in the absence of some type of coercion (*Shupe* v. *Sigler* (D. Neb.), 230 F. Supp. 601), vitiate a

subsequent plea of guilty. (*Moore* v. *Gladden* (D. Ore.), 275 F. Supp. 703, 706.) A guilty plea induced by promises and threats which deprive it of its voluntary character is, of course, void. (*Machibroda* v. *United States,* 368 U.S. 487, 7 L. Ed. 2d 473, 82 S. Ct. 510.) All persons knowledgeable in the area of criminal trial practice recognize, however, that many guilty pleas are the result of some form of "bargaining", and that fact alone is not fatal to a conviction based upon such a negotiated plea. (*Cortez* v. *United States* (9th cir.), 337 F.2d 699, 701.) One statement of the rule which has been promulgated provides that: "a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." (*Shelton* v. *United States* (5th cir.), 246 F.2d 571, 572.) The crux of the matter is that a defendant who has entered a plea of guilty after understandingly engaging in plea negotiations must be able to show that his plea was coerced by threats or promises of illegitimate action by law enforcement officials. (*People* v. *Heirens,* 4 Ill.2d 131, 141; *Kent* v. *United States* (1st cir.), 272 F.2d 795, 798-9.) This, in our judgment, Bowman has failed to do.

The record of the post-conviction hearing, in which only Sheriff Busen and Bowman testified, is unclear as to who actually initiated the plea negotiations. Petitioner stated he did "not particularly" start the conversations. The sheriff testified that when he brought petitioner meals on April 5, he "was asked [by Bowman] to contact the other counties" to see "if the charges would be dropped in those counties" if petitioner consented to plead guilty to the burglary charge in Brown County. The sheriff did in fact obtain such as-

surances from the other counties, but, Bowman testified, when a term of three to seven years was suggested by the sheriff as the appropriate penalty he said, "No, I ain't going down, three to seven." The arrangement finally agreed upon was that the prosecution would recommend a sentence of from three to five years as punishment for the burglary, would not prosecute the escape charge and the other counties would not press their burglary charges. Considering the presence of a confession as to the validity of which no substantial challenge is made, a prior record of two burglary convictions, the pending escape charge and the burglary charges in the three adjoining counties, it is difficult to envision prosecution agreement to any arrangement more advantageous to petitioner. While this result was arrived at without the benefit of Attorney Pezman's direct assistance, the petitioner did admit that he had previously discussed the situation with his attorney who informed him that even if he "beat the charges" in Brown County, he would have to face similar charges in the other counties. Sheriff Busen testified that it was petitioner who "wanted to plead and get it over with" on April 6, while his attorney was in Chicago. It is also clear from the testimony that before the petitioner was returned to court, the sheriff sought to contact Attorney Pezman at home and at the hotel at which the attorney was staying in Chicago but that these efforts were unsuccessful.

There is no paucity of cases which have held binding pleas of guilty that were entered by informed defendants in the absence of counsel. (See *e.g., Smith* v. *People,* (Colo., 1967), 428 P.2d 69; *Snow* v. *State,* 245 Ind. 423, 199 N.E.2d 469; *Semmes* v. *Williard,* 247 Ore. 583, 431 P.2d 844; *Creighbaum* v. *State,* 35 Wis.2d 17, 150 N.W.2d 494; *People* v. *Grames,* 8 Mich. App. 375, 154 N.W.2d 548.) One who understandingly pleads guilty without the assistance of an attorney foregoes the chance that he might have benefited from such aid. *(State* v. *Burnett,* 30 Wis.2d 375,

141 N.W.2d 221, 225.) We have previously rejected the contention that a mere offer to recommend a reduced sentence constitutes duress (*People* v. *Baldridge,* 19 Ill.2d 616, 621), and we also know of "no court [which] has held that any such concession made by the prosecution necessitates a finding that the plea was involuntary." (*Martin* v. *United States* (5th cir.), 256 F.2d 345, 349; *Cortez* v. *United States* (9th cir.), 337 F.2d 699, 701.) We would, as previously intimated herein, require the threat or promise of illegitimate action by government officials before such negotiations could be held to invalidate a defendant's plea of guilty. See *People* v. *Heirens,* 4 Ill.2d 131, 141; *Kent* v. *United States* (1st cir.), 272 F.2d 795, 798-9.

We do not intend to encourage plea negotiations in the absence of the attorney retained or appointed to represent a defendant in a criminal case, and it clearly would have been preferable to have postponed acceptance of the guilty plea until Attorney Pezman's return. There is, however, no constitutional prohibition against a defendant, who has once pleaded not guilty to a criminal charge while accompanied by his attorney, returning *pro se* into open court to change his plea to guilty, so long as no improper inducements by law enforcement authorities have coerced that change. (*In re Martinez,* 52 Cal.2d 808, 345 P.2d 449.) Here the accused was fully informed of his rights, possessed ample experience in criminal proceedings, and was an eager and apt participant, if not instigator of the negotiations; he did have a constitutionally provided right to proceed without his lawyer, and he repeatedly indicated his desire to do so after being informed by the judge that he need not. He now contends he was then "scared", "afraid the other [counties] might go ahead and try me", "that I would get worse real punishment, more severe sentence, than I would here, and I was getting tired of the sweat box [jail cell] up there." But these factors, substantial though they may have been in petitioner's thinking, resulted from no improper conduct

by the authorities. They are but the usual apprehensions resulting from the course of conduct which petitioner had pursued; factors which normally motivate those committing multi-county offenses to seek resolution of all by pleading guilty to one.

We accordingly hold it was not constitutionally impermissible in the circumstances of this case, where the negotiations leading to a change of plea were at least willingly participated in, and more likely initiated by, petitioner, to allow him *pro se* to change such plea after adequate explanation of his rights, admonition as to the consequences of his action and an unequivocal indication of his desire to proceed in such manner.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

On April 4, 1966, at the defendant's request, an attorney was appointed to represent him. On April 5, 1966, at the preliminary hearing, his attorney refused to waive indictment. On the following day, April 6, 1966, his attorney was out of town, and on that day the defendant was again brought into court. There he waived indictment, entered a plea of guilty, and was sentenced to the penitentiary. In my opinion this procedure violated the defendant's constitutional right to counsel and his post-conviction petition should have been granted.

The majority of the court considers the issue to be whether a defendant can waive his right to counsel without the assistance of counsel. Statement of the issue in this form leads to a consideration of whether the constitution forces a lawyer upon a defendant when he does not want one. In this case, however, the defendant had requested the assistance of an attorney, and counsel had been appointed to represent him. As I see the issue, it is whether the defendant was denied the effective assistance of counsel when

the sheriff, in the absence of the defendant's attorney and without notice to him, engaged in plea negotiations with the defendant, reached an agreement, and then brought the defendant before the court where he waived his constitutional rights and pleaded guilty.

In several cases the Supreme Court of the United States held that the constitutional right to counsel exists at every "critical" stage of a criminal proceeding, whether or not that stage occurs in the courtroom. It has enforced that right by excluding incriminating statements made by an accused to a Federal agent, while free on bond and in the absence of his attorney. (*Massiah* v. *United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199.) In *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, statements elicited from a suspect after the police had refused his request to consult with his attorney were held inadmissible on the ground that he had been denied his right to the assistance of counsel. And in *Gilbert* v. *California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and in *United States* v. *Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, convictions were vacated because an accused was exhibited to witnesses at a post-indictment identification lineup conducted without notice to and in the absence of the accused's appointed counsel.

In my opinion the stage of the proceeding at which a representative of the prosecution induces a defendant to plead guilty is a critical stage at which a defendant requires the assistance of counsel. In support of its holding to the contrary, the majority relies upon *In re Martinez* (1959), 52 Cal. 2d 808, 345 P.2d 449. In that case, however, there were no promises or threats made by representatives of the State. Moreover, that case was decided well before *Gilbert,* 1967, *Wade,* 1967, *Massiah,* 1964, and *Escobedo,* 1964. It was even decided before the decisions of the Supreme Court of the United States in *Hamilton* v. *Alabama* (1961),

130

368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157; *Gideon* v. *Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792; and *White* v. *Maryland* (1963), 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050.

As I read *Moore* v. *Gladden* (D. Ore. 1967), 275 F. Supp. 703, the court there recognized that if any bargaining occurred in the absence of the defendant's counsel, the plea of guilty would be set aside. *Anderson* v. *North Carolina* (W.D. N.C. 1963), 221 F. Supp. 930, is to the same effect. See also A.B.A. Minimum Standards for Criminal Justice, Pleas of Guilty, No. 3.1(a), p. 65 (1967).

It may be, as the majority opinion implies, that the defendant drove a very good bargain without the assistance of his attorney. Indeed, it may be that the only factor militating in his favor was the expense of convening a grand jury to return an indictment against him, an expense that might be considered burdensome to the officials of a county containing 6,200 inhabitants. Even so, however, the defendant was entitled to the assistance of his attorney in appraising his situation.