People of the State of Illinois, Plaintiff-Appellee,
v. Andrew M. Bauta, Defendant-Appellant.

Gen. No. 53,645.

First District, First Division.

April 27, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James N. Gramenos, James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John R. McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Andrew M. Bauta, pleaded guilty and was convicted of unlawful possession of narcotics.

He was sentenced to the penitentiary for a minimum of five years and a maximum of five years and one month.

On appeal, the defendant contends that (1) the information was legally insufficient because it failed to show the place of the offense or the chapter and section number of the statute purportedly violated; (2) his plea of guilty was not voluntarily made since it was induced by the suggestion of the court that a failure to enter a plea could result in his receiving a more substantial prison sentence and (3) the trial court accepted his plea without a showing that it was voluntarily and understandingly made by him.

The record reveals that on August 19, 1968, the defendant, Andrew M. Bauta, appeared before Judge Kenneth R. Wendt of the First Municipal District of the Circuit Court for a hearing to determine probable cause on a narcotic charge. At the hearing, Richard McKelvey of the vice control division of the narcotic unit of the Chicago Police Department testified, that on April 24, 1968, a special employee came to his office and advised that he could make a controlled purchase of heroin from a person known to him as Andrez. The informer was given $25 of prerecorded money and taken to the vicinity of 2742 West Adams Street. The informer was to honk his horn as a prearranged signal for the defendant to come to the car and sell him the narcotics. After the informer honked the horn, the defendant emerged from the apartment building and entered the informer's car. Officer McKelvey testified that he was about four feet from the defendant when the defendant entered the car. When the officer observed a prearranged signal that the informer had purchased the narcotics, he and another officer came to the car and the special employee gave them a container holding an unknown quantity of white powder. The officer arrested the defendant

134

and observed him placing between his legs the $25 in prerecorded currency. The white powder was submitted to the crime laboratory and was found to be heroin. The court then stated that the case was going to the grand jury.

Officer Paul Louis then testified that on May 23, 1968, a police informer stated that he could purchase a $25 bag of heroin from a person called Andrez. The informer was searched, found to be free of all narcotics and money and then given $25 of prerecorded money. Officer Louis drove the man on that day to Washtenaw and Division and then observed him enter a green Ford. He was about twenty to twenty-five feet away when he saw the informer hand the defendant $25 and the defendant in turn give the informer a packet. The informer then returned to the squad car and gave the officer the packet which was field tested. A letter from the crime laboratory stated that the packet was found to contain heroin. The defendant was arrested on the evening of May 24, 1968, and $20 of the prerecorded money was found in his pocket.

The court commented that there were two sales and that the defendant had previously been placed on probation by him and had served one year in the House of Correction. "I imagine the State wants a bunch of years. I have him on three years' probation . . . I will imagine they want to start with at least five years." The trial judge then asked the public defender if he wanted to talk to the defendant. "They have got two sales here. There is corroboration. They recovered the money . . . ."

The public defender then asked if something couldn't be done for this man. The prosecutor said that since this would be the second conviction, he couldn't go under five years. The judge gave the public defender a few minutes to discuss it with the defendant. Afterwards

the public defender informed the court that he had told the defendant that if he could plead guilty at this stage of the proceedings his sentence would be around five years, while if the case went to the grand jury there was a possible sentence of from ten years to life. The public defender then requested one or two weeks for the defendant to think it over. When the court questioned whether the defendant had a language barrier, the public defender stated, "No, he knows . . . more about it than I do, your Honor." The hearing was continued until August 23rd.

When the case was called on August 23rd, the public defender informed the court that the defendant would plead guilty. The prosecutor said that the State would recommend five years to five years and one month. It was agreed that the defendant would plead guilty to only one count of possession. The public defender then stated:

> Your Honor, I have completely admonished my client of his constitutional rights. I have told him in a case like that he has a right to go in front of a grand jury . . . . I told him he has a right to a trial by jury which in this case he chooses to waive. I told him in a case like this and by throwing himself on the mercy of the court he faces the possible sentence of two to ten years on the possession of heroin charge, . . . or if he goes upstairs he faces a possible mandatory life sentence on . . . two sales.

The public defender had his client sign a jury waiver form and then entered a plea of guilty. He also informed the court that he had advised his client that in a case like this if he wanted to plead guilty he had a right of appeal. The court told the defendant that he was charged with two sales of heroin and, if found guilty, he could get ten years to life. He told the

defendant that he had been given considerable time to think it over and asked "do you recall that?" and the defendant answered "yes, sir." The following colloquy then took place:

THE COURT: "So for four days you have had a chance to think about this and take this plea for five years, is that right?"

MR. BAUTA: "Yes, sir."

THE COURT: "And do you still wish to do that, is that right?"

MR. BAUTA: "Yes, sir, your Honor."

THE COURT: "All right. You have a right to have this cause submitted to the grand jury for possible indictment. Do you wish to waive that right? What is that?"

MR. BAUTA: "Yes, sir."

THE COURT: "You just signed a piece of paper that says 'jury waiver'; that means you are waiving your right to trial by jury. Do you wish to waive that right?"

MR. BAUTA: "Yes, sir."

THE COURT: "If you plead guilty in this matter, this court may sentence you to the state penitentiary from two to ten years. Knowing that do you still wish to plead guilty?"

MR. BAUTA: "Yes, sir."

THE COURT: "And, of course, you always have a right of appeal, even on a plea of guilty . . . ."

The court then found the defendant guilty. The State recommended five years to five years and one month which sentence was ordered by the court.

█ █ It is contended that the defendant was found guilty on an information which neither stated the place of the offense nor the statutory provision alleged to have been violated and was therefore fatally defective. We have examined the information and find that there is no merit to this contention. The information and the arrest report which was attached to it sufficiently charged the defendant with violation of chapter 38, section 22–3 of the Ill Rev Stats by unlawfully, knowingly and feloniously possessing heroin, a narcotic drug, on April 24, 1968, and the place of the crime was Chicago, Illinois. People v. Gregory, 95 Ill App2d 396, 237 NE2d 720. The tests respecting the sufficiency of a charge, repeatedly enunciated in the case law, as defense counsel has argued, are whether it would enable the defendant to prepare his defense and whether it would sustain a plea of acquittal or conviction in bar of any further prosecution for the same offense. People v. Mills, 40 Ill2d 4, 11, 237 NE2d 697, 701; People v. Patrick, 38 Ill2d 255, 258, 230 NE2d 843, 845. We are satisfied that these tests were met.

It is principally contended that the defendant's plea of guilty was not voluntarily made because the trial judge suggested to the defendant that a failure to enter a guilty plea would result in a more substantial prison sentence. In support of this argument, the defendant relies on the recent case of Boykin v. Alabama, 395 US 238, 89 S Ct 1709. In Boykin, three days after counsel was appointed for the indigent defendant, the defendant pleaded guilty to all five robbery indictments against him. So far as the record showed, the judge asked no questions of the defendant who did not address the court.

> Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it. . . .

138

There was nothing to indicate that he had a prior criminal record. 395 US at 240, 89 S Ct at 1710.

The Supreme Court held that it was error to accept the defendant's guilty plea without an affirmative showing that it was intelligently and voluntarily made. The judge must canvass the matter with the accused to make certain that he has a full understanding of what the plea connotes and of its consequence.

■ In the case at bar, the judge did so canvass the defendant. We do not agree that the record reflects that the defendant did not have a full understanding of what the plea of guilty connotes and of its consequence, nor do we find any language barrier. In addition to the defendant's responses to the judge's questions which indicate that his plea was voluntarily made, other facts must be remembered. The defendant was not a novice of criminal court proceedings. He had been previously convicted of a narcotics offense, had served a year in jail and was still on probation from the same judge. He was confronted by strong testimony against him of two controlled sales of narcotics, and he knew that if convicted on these charges he faced a mandatory sentence of ten years to life imprisonment. The defendant also knew that if he did not plead guilty all the judge could do would be to find probable cause and hold the defendant over for the grand jury. If the grand jury voted an indictment, the defendant could then have a jury trial. The record establishes that this had clearly been explained to him by his appointed counsel and the court.

■■ We also reject the claim that by advising the defendant that he had a right to appeal even on a plea of guilty, the trial judge illustrated the inducement and coercion which he "may not have intended, but inadvertently created." It is the plain duty of the judge to so inform the defendant of his right to appeal even after a plea of guilty. Nor are we impressed that the fact that

139

the defendant filed a pro se notice of appeal twelve days after he entered a plea of guilty was an affirmative showing that his plea was not voluntarily and understandingly entered.

It is our conclusion that the trial judge conscientiously attempted to assist the defendant in view of the testimony he had heard and in view of the fact that the defendant could also be held to have violated his probation. The court did not accept a plea of guilty on the day of the first hearing, but continued the matter for several days so that the defendant could have time to consider it. At the second hearing, the defendant who was represented by appointed counsel did not request another continuance, but voluntarily entered a guilty plea.

 A mere offer to recommend a reduced sentence does not constitute duress. People v. Bowman, 40 Ill2d 116, 239 NE2d 433. As stated in Bowman:

> A guilty plea induced by promises and threats which deprive it of its voluntary character is of course void. (Machibroda v. United States, 368 US 487, 82 S Ct 510, 7 L Ed2d 473.) All persons knowledgeable in the area of criminal trial practice recognize, however, that many guilty pleas are the result of some form of "bargaining," and that fact alone is not fatal to a conviction based upon such a negotiated plea. (Citing authority.) . . . The crux of the matter is that a defendant who has entered a plea of guilty after understandingly engaging in plea negotiations must be able to show that his plea was coerced by threats or promises of illegitimate action by law enforcement officials. (Citing authorities.) 40 Ill2d at 125, 239 NE2d at 438.

The record demonstrates that the defendant's guilty plea was voluntarily and understandingly entered and

was not induced by promises of illegitimate action by law enforcement officials. The judgment is therefore affirmed.

Affirmed.

MURPHY and ADESKO, JJ., concur.