2022 IL App (1st) 200744
No. 1-20-0744
Opinion filed November 14, 2022

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CR 07016 |
| DEON HILLIARD, | ) ) ) | The Honorable Brian Flaherty, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Walker concurred in the judgment and opinion.
Justice Coghlan dissented, with opinion.

**OPINION**

¶ 1    At his arraignment, Deon Hilliard asked to proceed "in proper persona" three times. The third time he included in his request a repudiation of his then-counsel's agreement to a continuance. On the next court date, the trial court admonished Hilliard about representing himself and allowed him to discharge counsel. During the following months, Hilliard persisted in his demand for a speedy trial, and the parties agreed the State occasioned 93 days of delay. Now Hilliard argues that the total days should include the 29 days between his arraignment and the day the trial court allowed his counsel to withdraw. We agree. Considering the totality of the record, including

Hilliard's words and conduct, we find his request to represent himself was "clear and unequivocal" the first day he made it. Therefore, his counsel's agreement to a continuance cannot be attributed to him, and the State brought him to trial outside the 120-window provided in section 103-5(a) of the Code of Criminal Procedure of 1963 (commonly known as the Speedy Trial Act) (725 ILCS 5/103-5(a) (West 2018)). Hilliard acknowledges he forfeited this claim, but the State makes no argument that an error we might find is not plain error. We reverse.

¶ 2                                Background

¶ 3     Hilliard and his then-girlfriend, Paris Williams, lived in an abandoned house in Harvey, Illinois. In 2019, the two had an altercation, and a witness called the police. Officers arrived and detained Hillard after speaking to Williams. Once Hilliard was in custody, Williams told one of the officers that a gun was in the house. The officer followed Williams inside and saw a Marlin .22 rifle leaning against the wall near the door. The officer seized the gun (which was unloaded) and searched Hilliard, finding a magazine clip in his pocket. The clip fit the rifle.

¶ 4     Before officers left, Hilliard got out of the squad car and ran up some nearby train tracks shouting, "I don't want to go back to prison." Officers caught Hilliard, brought him back to the squad car, and successfully arrested him.

¶ 5     A jury found Hilliard guilty of armed habitual criminal, unlawful use of a weapon by a felon, and escape.

¶ 6     Before trial, Hilliard was initially represented by counsel. At the first appearance on April 16, 2019, this exchange took place:

> "THE COURT: This is Mr. Hilliard. Counsel, here is a copy of the charging
>
> instrument.

MS. THORNTON: Assistant Public Defender Starr Thornton on behalf of the defendant. Your Honor, we acknowledge receipt, waive formal reading, enter plea of not guilty. I seek leave to file my appearance at this time as well as written motions.

MR. DEON HILLIARD: Defendant proceeds proper persona.

THE COURT: Mr. Hilliard, there's a statute in the State of Illinois that says if you willfully fail to appear at your trial, a trial could be conducted in your absence. You then would be giving up your right to see and hear the witnesses testify against you. If you were convicted, you would be sentenced in your absence. Do you understand that?

[HILLIARD]: Yes, sir, I do.

THE COURT: Okay.

[HILLIARD]: I wish to proceed proper persona, Judge.

THE COURT: What day do you want to come back?

MS. THORNTON: Judge, I was looking to come back on May 15th.

THE COURT: By agreement 5-15-19 for status on further discovery.

[HILLIARD]: Defendant demands trial not by agreement. I wish to proceed proper persona."

No one addressed Hilliard's statement, and the court continued the case. On May 15, the next court date, Hilliard again asked to represent himself:

"MS. NESBIT [(ASSISTANT PUBLIC DEFENDER)]: *** And I believe on the last court date, Mr. Hilliard wished to address the Court. He wanted to represent himself.

But Ms. Thornton has had an opportunity to speak to him. At this time, he still wishes Ms. Thornton to represent him.

Is that correct?

[HILLIARD]: That's correct. That's what I was trying to talk to her. She didn't come back.

I did want to represent myself still proceeding proper persona and demand trial."

Immediately after this exchange, the trial court admonished Hilliard about representing himself and accepted his decision to do so. Before continuing, the trial court asked Hilliard what he meant by "pro per." Hilliard explained that he learned through a class he was taking that "proper persona," or "pro per," was the correct way of saying *pro se*. The trial court told him that "pro per means nothing in the law" and admonished Hilliard not to refer to himself that way anymore. Hilliard demanded trial, and the court continued the case on the State's motion between May 15 and June 4.

¶ 7    At the court date on June 4, Hilliard agreed to one continuance to prepare a motion but decided to abandon the motion because he did not receive enough time in the law library.

¶ 8    On June 24, Hilliard reasserted his demand for trial. At the next court date, the State answered not ready for trial because a witness was out of town. The State moved to join the related misdemeanor domestic violence case, and the court continued the matter by agreement so Hilliard could draft a response. After the court denied the State's motion for joinder, Hilliard reasserted his demand for trial. The court set the case for trial, but the State answered not ready due to "witness issues." The next week, the case proceeded to a jury trial during which Hilliard represented himself.

¶ 9                              Analysis

¶ 10    Hilliard raises several claims against the judgment: (i) he was not brought to trial within 120 days as required by the Speedy Trial Act, (ii) the trial court denied him a "constitutionally sufficient opportunity to prepare his defense," (iii) the trial court erred by empaneling three jurors who "expressed self-doubt concerning their ability to be impartial," (iv) the trial court erred by denying Hilliard's request for standby counsel, (v) the officers unlawfully entered Hilliard's home and seized the gun, (vi) the trial court erred by admitting other-crimes evidence related to the domestic altercation that led to the officers' presence at Hilliard's home and arrest, (vii) there was a fatal variance between the charge for escape in the indictment and the evidence presented at trial, and (viii) Hilliard's simultaneous conviction for armed habitual criminal and unlawful use of a weapon by a felon violates the one-act, one-crime rule.

¶ 11    Because we find it dispositive, we only address Hilliard's first argument. The State initially argues Hilliard forfeited his speedy trial claim. Hilliard acknowledges that he did not bring a motion to dismiss under the Speedy Trial Act and did not raise a speedy trial argument in his posttrial motion. So, we agree the claim is forfeited. See *People v. Staake*, 2017 IL 121755, ¶ 30 (preserving claim requires raising it in trial court by objecting at time of error and including the error in posttrial motion).

¶ 12    In *Staake*, however, our supreme court acknowledged and declined to overrule a body of appellate court decisions finding that errors under the Speedy Trial Act can be reviewed as second-prong plain error. *Id.* ¶¶ 31, 33 (collecting cases and declining State's invitation to overrule those cases). Under second-prong plain error, we need not honor a defendant's procedural default because " 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Id.* ¶ 31. The State argues that no error occurred and, significantly,

makes no challenge to Hilliard's invocation of second-prong plain error. Because the State makes no plain error argument, we take our cue from the court in *Staake* and decline to take a position on the soundness of our appellate court's decisions reviewing forfeited Speedy Trial Act claims under the second prong of the plain error doctrine. We instead will determine whether an error occurred and assume, without deciding, that any error constitutes second-prong plain error.

¶ 13    The Speedy Trial Act provides:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making *** an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2018).

The parties' dispute is narrow. Hilliard and the State agree that the State contributed to 93 days of pretrial delay. But they disagree about the attribution of delay for the 29 days between April 16 and May 15, 2019. Attributing these days to the State would mean trial began on the one hundred twenty-second day, outside the speedy trial term. The State argues we should attribute the delay to Hilliard because he was represented by counsel, who agreed to a continuance on April 16. Hilliard responds that he attempted to discharge counsel—and was ignored—so his counsel's actions should not bind him. If freed from the representations of counsel, Hilliard argues he demanded trial on April 16, meaning that the delay to May 15 cannot be counted against him.

¶ 14    Delays agreed to by counsel are attributable to the defendant unless the defendant "clearly and convincingly" attempted to assert the right to discharge counsel and proceed to an immediate trial. *People v. Mayo*, 198 Ill. 2d 530, 537 (2002). An attempt to waive counsel must be "clear and unequivocal" to avoid needless appeals about denial of the right to counsel or self-representation

and to prevent a defendant from waffling back and forth about their decision to represent themselves. *Id.* at 538. To determine whether a statement is clear and unequivocal, we examine " 'the overall context of the proceedings' " while indulging every reasonable inference against waiver. *Id.*

¶ 15    Reading the proceedings in context, we find Hilliard attempted to represent himself starting at his arraignment. On April 16, immediately after Hilliard's counsel introduced herself, Hilliard said, "Defendant proceeds proper persona." No one acknowledged him. The trial court admonished him about trying him in his absence if he was released and failed to appear. Again, Hilliard immediately said, "I wish to proceed proper persona." Everyone ignored him. Counsel then agreed to a continuance to May 15, but before proceedings adjourned, Hilliard said, "Defendant demands trial not by agreement. I wish to proceed proper persona." No one paid attention.

¶ 16    The State argues that Hilliard used the wrong language, "proper persona," when he really should have said, "*pro se*." Besides being overly formalistic, this argument assumes a familiarity with Latin legal terms foreign to most laypeople. Yet, the State acknowledges that the phrases "*in propria persona*" and "*pro se*" are "equivalent." ("*Pro se*" is the abbreviation of "*in propria persona.*" Another abbreviation of "*in propria persona*" is "*pro per*," favored by courts in some states. See Judicial Council of Cal., Handling Cases Involving Self-Represented Litigants: A Benchguide for Judicial Officers 1-5 (Apr. 2019), https://www.courts.ca.gov/documents/benchguide_self_rep_litigants.pdf [https://perma.cc/6L43-74X9]. ("*Pro per*" is often used in California trial courts. "In fact, it has been said that 'many pro pers do not even know that that is what they are.' ")

¶ 17    Indeed, our supreme court has used "*in propria persona*" and "*pro se*" interchangeably. See *People v. Bowman*, 40 Ill. 2d 116, 122-23 (1968). Even assuming "*in propria persona*" stands

for "*pro se*," the State argues that Hilliard did not use those words. We will not accept the State's invitation to read ambiguity into Hilliard's statement because of the judge's unfamiliarity with "*pro per*" as an accepted abbreviation of "*in propria persona*." See *Pro se*, Black's Law Dictionary (11th ed. 2019) (noting *pro se* is "[a]lso termed" *in propria persona*, *propria persona*, and *pro per*).

¶ 18    The State goes on to argue it is "clear" the trial court did not understand what Hilliard was saying. Context resolves that argument against the State. Every time counsel attempted to make a representation on Hilliard's behalf, he rebuffed her and articulated his decision to proceed "proper persona." He said it immediately after counsel introduced herself. He repeated it after she agreed to a continuance, which expressly demanded trial contrary to her request for a continue of the proceedings.

¶ 19    The dissent repeats the State's argument finding "[t]he court obviously did not understand" what Hilliard meant based on the court's comments on May 15. *Infra* ¶ 33. The trial court's misunderstanding of "proper persona," a term interchangeable with "*pro se*," is not Hilliard's burden to bear. The question is whether Hilliard's request was unambiguous, not whether the person hearing the request was subjectively confused about his meaning. The trial judge's understanding of a defendant's request may be the best evidence of clarity (see *People v. Rainey*, 2019 IL App (1st) 160187, ¶ 43), but we have found no case suggesting the defendant's plain words are unclear because the trial judge either did not understand them or, as here, ignored them. And to the extent the trial court was confused by the term, the time to clarify its confusion was April 16, when Hilliard said three times (and was ignored three times) that he wanted to proceed "proper persona." Based on legal definitions of "*in propria persona*," and the term's use in our

courts, we find Hilliard unambiguously requested to represent himself on April 16. The trial court's unfamiliarity with the term is not a basis on which to reject Hilliard's claim.

¶ 20    Beyond the context on April 16, the discussion on May 15 shows that counsel understood Hilliard wanted to discharge her at his arraignment. Another assistant public defender stepped up for Hilliard's counsel and explained that Hilliard "wanted to represent himself." Hilliard agreed he and counsel had since spoken but clarified—in the same sentence—that he still wanted to represent himself and demanded trial. Reading the proceedings on April 16 and May 15 together, we find Hilliard had consistently made his demand to represent himself known.

¶ 21    The State resists this conclusion with one more argument, that the trial court was not required to rule on Hilliard's request to represent himself at the time he made it, relying on *People v. Baez*, 241 Ill. 2d 44 (2011). There, our supreme court found no error in the trial court suggesting a continuance for the defendant to consult with his counsel before accepting the defendant's request to represent himself. *Id.* at 117. Importantly, however, the court's decision in *Baez* was not inflected by the ticking time of the speedy trial clock. We could easily apply *Baez* in the context of a request for self-representation unaccompanied by a demand for trial, but those are not the facts before us.

¶ 22    The court in *Baez* also relied on *Mayo*, which did involve delay in ruling on a self-representation request in the context of a speedy trial demand. In *Mayo*, however, the defendant had repeatedly flipped back and forth between requesting counsel and dismissing counsel. *Mayo*, 198 Ill. 2d at 538-39. For instance, the defendant dismissed his counsel only to request counsel be appointed eight days later. *Id.* at 538. About four months after that, the defendant reaffirmed he wanted counsel to represent him but, in the same proceeding, asked to represent himself again. *Id.* The court found the defendant's request was not unequivocal because he had switched positions

and, therefore, the trial court did not err in granting a continuance for the defendant to consider his choice. *Id.* at 539. Hilliard consistently and firmly said he wanted to represent himself and demanded trial.

¶ 23    But there is an even more important distinction. In *Mayo*, our supreme court found the trial court did not abuse its discretion in ordering a continuance after considering the context of the defendant's request to represent himself. *Id.* Here, however, there is no evidence that the trial court exercised similar discretion because no one acknowledged Hilliard the three times he spoke up during his arraignment.

¶ 24    Two principles guide us. First, the trial court's failure to exercise discretion, where it has discretion, is itself an abuse of discretion. *E.g.*, *People v. Lovelace*, 2018 IL App (4th) 170401, ¶ 33 ("a trial court errs if it *** wholly fails to exercise its discretion"). Second, even if the trial court had ordered a continuance for Hilliard to confer with counsel, the circumstances differ markedly from *Mayo*. So, any decision the trial court might have made to continue the case for discussions with counsel would likely have been an abuse of discretion because Hilliard did not flip-flop between requesting counsel and requesting self-representation.

¶ 25    The State's argument boils down to one proposition: the trial court properly ignored Hilliard's request to represent himself because he did not use what the court considered the right words. But our supreme court has emphasized we are guided by context—not linguistic precision—in determining whether a self-representation request is "clear and unequivocal." *People v. Burton*, 184 Ill. 2d 1, 22-23 (1998) (describing factors like whether defendant's request was made for improper purpose, whether defendant later acquiesced in appointment of counsel, whether defendant's later conduct was consistent with relinquishing counsel, whether defendant remained silent at critical points in proceedings, and whether request timely). From his

arraignment, Hilliard asked to represent himself, and even if his words were interpreted as imprecise, he made his intent explicit by contradicting counsel every time she spoke. Moreover, he requested early in the proceedings and never wavered in his request to proceed *pro se* or used his request to delay or avoid litigating his case.

¶ 26    Considering the record in context, we find Hilliard's request to represent himself was "clear and unequivocal" on April 16, 2019. The delay of 29 days between April 16 and May 15 should not be attributable to him, meaning the State tried him outside the 120-day window provided in the Speedy Trial Act. As we mentioned, the State presents just one argument on this issue—there was no error and does not contest any error we find as plain error.

¶ 27    We reverse Hilliard's convictions as obtained in violation of the Speedy Trial Act. See *People v. McGee*, 2015 IL App (1st) 130367, ¶ 26 (describing remedy for violating Speedy Trial Act).

¶ 28    Reversed.

¶ 29    JUSTICE COGHLAN, dissenting:

¶ 30    Although a criminal defendant has the right of self-representation, "[i]t is well settled that waiver of counsel must be clear and unequivocal, not ambiguous." (Internal quotation marks omitted.) *People v. Baez*, 241 Ill. 2d 44, 116 (2011). Our supreme court has emphasized that a defendant waives his right to self-representation unless he "articulately and unmistakably demands to proceed *pro se*." (Internal quotation marks omitted.) *People v. Burton*, 184 Ill. 2d 1, 22 (1998). "A defendant must explicitly inform the trial court he wants to proceed *pro se* because '[a]nything else is an effort to sandbag the court and the opposition, to seek an acquittal with an ace up the sleeve to be whipped out in the event of conviction.' " *Id.* (quoting *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992)).

¶ 31    Here, defendant did not "articulately and unmistakably" demand to proceed *pro se* at his April 16 arraignment. Defendant was represented by an assistant public defender (APD) who acknowledged receipt of the indictment, waived formal reading, and entered a plea of not guilty on his behalf. The defendant interjected: "Defendant proceeds proper persona." The record does not reflect any response to this comment by the trial court. The record does reflect that the trial court proceeded to admonish the defendant that if he willfully failed to appear at trial, he could be tried and sentenced in his absence, and the following colloquy occurred:

"THE COURT: *** Do you understand that?

[DEFENDANT]: Yes, sir, I do.

THE COURT: Okay.

[DEFENDANT]: I wish to proceed proper persona, Judge.

THE COURT: What day do you want to come back?

[APD]: Judge, I was looking to come back on May 15th.

THE COURT: By agreement 5-15-19 for status on further discovery.

[DEFENDANT]: Defendant demands trial not by agreement. I wish to proceed proper persona."

The proceedings ended there.

¶ 32    At the next status hearing on May 15, a different APD appeared on behalf of defendant because the APD of record "had to run to another room." The APD stated: "[O]n the last court date, [defendant] wished to address the Court. He wanted to represent himself. But [the APD of record] has had an opportunity to speak to him. At this time, he still wishes [the APD of record] to represent him. Is that correct?" Defendant clarified: "I did want to represent myself still proceeding proper persona and demand trial." The trial judge admonished defendant in accordance

with Illinois Supreme Court Rule 401 (eff. July 1, 1984) and permitted the APD to withdraw. The judge then asked:

> "THE COURT: One of the things you said when you addressed me, you said you were pro per.
>
> [DEFENDANT]: Proper persona.
>
> THE COURT: What does that mean?
>
> [DEFENDANT]: Pro se. It's the proper way of saying it ***.
>
> ***
>
> THE COURT: Pro per means nothing in law. It doesn't mean anything. So don't refer to yourself as pro per any more."

¶ 33 Defendant did not "clear[ly] and unequivocal[ly]" (*Baez*, 241 Ill. 2d at 116) attempt to assert his right to discharge his attorney at the April 16 hearing. The court obviously did not understand defendant's request to proceed "proper persona" as a request to waive his right to counsel, as evidenced by the fact that it specifically asked defendant what "proper persona" meant at the next court date. Even defendant's counsel was unsure as to his meaning, as shown by her mistaken belief at the May 15 hearing that defendant still wanted to be represented by the public defender. Notably, as soon as defendant clarified that he wished to represent himself, the trial court properly admonished him and allowed his counsel to withdraw.

¶ 34 "When a defense attorney requests a continuance on behalf of a defendant, any delay caused by that continuance will obviously be attributed to the defendant." *People v. Kaczmarek*, 207 Ill. 2d 288, 296 (2003). Because defendant's counsel requested a continuance at the April 16 hearing and defendant did not " 'articulately and unmistakably' " (*Burton*, 184 Ill. 2d

at 22) assert his right to waive counsel, the delay caused by the continuance is properly attributed to defendant and his right to a speedy trial was not violated.

¶ 35        I respectfully dissent and would affirm the defendant's conviction and sentence.

*People v. Hilliard*, 2022 IL App (1st) 200744

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-07016; the Hon. Brian Flaherty, Judge, presiding. |
| **Attorneys for Appellant:** | Michael W. Weaver, of McDermott Will & Emery, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak and Stacia Weber, Assistant State's Attorneys, of counsel), for the People. |